# Exhibit 1

FILED
12/16/2021 8:54 AM
Mary Angie Garcia
Bexar County District Clerk
Accepted By: Laura Castillo
Bexar County - 285th District Court

CIT PPS  WJD

CAUSE NO. _____2021CI25580_____

| | | |
|---|---|---|
| DAVID B. MONTGOMERY and TIFFANY | § | IN THE DISTRICT COURT OF |
| T. MONTGOMERY, Individually and On | § | |
| Behalf of Minor Children G.J. and H.M. | § | |
|     Plaintiffs | § | |
| | § | |
| vs. | § | BEXAR COUNTY, T E X A S |
| | § | |
| BIRD RIDES, INC. D/B/A BIRD, | § | |
| JOHN OR JANE DOE #1, JOHN OR | $ | |
| JANE DOE #2, and JOHN OR JANE DOE #3 | $ | |
|     Defendants | § | _____ JUDICIAL DISTRICT |

## PLAINTIFFS' ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, PLAINTIFFS DAVID B. MONTGOMERY and TIFFANY T. MONTGOMERY, Individually and On Behalf of Minor Children G.J. and H.M., hereinafter also referred to at times as "Plaintiffs," or individually as "David" or "Tiffany"," complaining of Defendant Bird Rides, Inc. d/b/a Bird, hereinafter also referred to at times as "Bird" or "Bird Scooters," and also complaining of Defendants John or Jane Doe #1, John or Jane Doe #2, and John or Jane Doe #3, hereinafter also referred to at times as the "Doe Defendants,"[1] and for causes of action would show unto the Court and Jury the following:

1.    This is not a products liability case.

---

[1] Further, the use of the word "Defendants" in this Petition is inclusive of all Defendants – Bird Rides, Inc. and all Doe Defendants (#1-3).

2.     This case is instead about Defendants' combined actions and inactions that resulted in severe and permanent brain injuries to a productive and caring husband, stepfather, and father and in turn injuries to that man's wife, stepson, and daughter.

3.     Defendants only had to accomplish a simple and inexpensive task: make sure that a rental scooter was running properly when it was rented.  Defendants only had to put forth the simple effort of routinely inspecting, evaluating, and maintaining the rental scooter to accomplish this.

4.     Defendants did not.  Bird Rides, Inc. wanted to save a buck.

5.     And as a result the family is here in court seeking compensation for Bird Ride, Inc.'s greed.

## I.     DISCOVERY

6.     Discovery is intended to be conducted under Level 3 of Texas Rule of Civil Procedure 190.3.  Plaintiffs affirmatively plead that they seek monetary relief aggregating more than $50,000.00.

## II.     NOTICE OF REQUIRED DISCLOSURES

7.     Pursuant to the Texas Rules of Civil Procedure 194.1 and 194.2, Defendants must provide to Plaintiffs, without awaiting a discovery request and within thirty (30) days of the filing of any Defendant's first answer or general appearance, the information or material described in Rule 194.2(b)(1-12) (Initial Disclosures).  Any Defendant that is served or otherwise joined after the filing of the first answer must make their initial disclosures within thirty (30) days after being served or joined.

### III.    RULE 47 DISCLOSURE

8.      Only because it is required by Rule 47 of the Texas Rules of Civil Procedure, Plaintiffs plead for monetary relief in an amount over $1,000,000 and judgment for all other relief to which Plaintiffs are entitled.  However, Plaintiffs believe that the amount of monetary relief actually awarded as damages should and ultimately will be determined by a jury.

9.      Plaintiffs reserve the right to amend this damage calculation as discovery progresses.

### IV.   PARTIES

10.     Plaintiff David B. Montgomery is a resident of Harris County, Texas.

11.     Plaintiff Tiffany T. Montgomery is a resident of Harris County, Texas.

12.     Defendant Bird Rides, Inc. d/b/a Bird is a for-profit corporation conducting business in Bexar County, Texas, the location of the events in this lawsuit.  __This Defendant shall be served with process via its registered agent, National Registered Agents, Inc., 1999 Bryan Street, Suite 900, Dallas, Texas 75201.__

13.     John or Jane Doe #1 is an as-yet unnamed individual residing in Bexar County, Texas.  This individual will be served with process once his or her actual name and address are identified during discovery.

14.     John or Jane Doe #2 is an as-yet unnamed individual residing in Bexar County, Texas.  This individual will be served with process once his or her actual name and address are identified during discovery.

15.     John or Jane Doe #3 is an as-yet unnamed individual residing in Bexar County, Texas. This individual will be served with process once his or her actual name and address are identified during discovery.

## V.     MISNOMER/ALTER EGO

16.     In the event that any parties are misnamed or are not included herein, it is Plaintiffs' contention that such was a "misidentification," "misnomer," and/or such parties are/were "shell entities" and/or "alter egos" of certain parties named herein.  However, in no event do Plaintiffs allege that Defendant John or Jane Doe #1 or John or Jane Doe #2 are alter egos of Defendant Bird Rides, Inc.  It is Plaintiffs' intent to bring this cause against any and all parent, subsidiary, or affiliated entities currently unknown to the Plaintiffs and/or used by any Defendant as corporate/entity "shields" to isolate the responsible parties in this case from liability.  Plaintiffs contend that such "corporate veils" should be pierced to hold such parties properly included in the interest of justice.

## VI.   JURISDICTION

17.     Plaintiffs bring suit for all damages to which Plaintiffs are entitled by law.  Plaintiffs' damages exceed the minimum jurisdictional limits of this Court.

18.     The Court has personal jurisdiction over Defendants as Defendants influenced and/or personally appeared in Bexar County, Texas and provided goods and services to or otherwise interacted with Plaintiff David B. Montgomery and others similarly situated, thus purposefully establishing minimum contacts with Texas, including Texas citizens, while invoking the benefits and protections of Texas laws.  The repeated contacts that

Defendants had with Plaintiff David B. Montgomery and others similarly situated were in Bexar County, Texas, giving rise to both specific and general jurisdiction.

19.     Based on the foregoing, this Court has personal jurisdiction over Defendants because Defendants conducted business in the State of Texas and had sufficient contacts with the State of Texas, both generally and with regard to this specific action; the exercise of personal jurisdiction over Defendants is proper.

20.     Specific jurisdiction is also proper over Defendants because Defendants and/or employees of Defendants were in the course and scope of their employment and in the furtherance of Defendants' contacts with Texas when working in Bexar County, Texas at the time of the incident or at the time of prior acts that gave rise to the incident.

21.     Plaintiffs are not bringing any cause of action or claim that involves a Federal law, a Federal claim, the United States Constitution, any United States treaties, any laws of the United States, or any sort of Federal subject matter jurisdiction.  Removal to Federal court would therefore be improper.

## VII.   VENUE

22.     Venue is proper in Bexar County, Texas under sections 15.002(a)(1 and 2) and 15.005 of the Texas Civil Practice & Remedies Code because Bexar County, Texas is the county where a substantial portion of the acts and omissions giving rise to the claims in this lawsuit occurred, and Bexar County, Texas is the place of residence for Defendants John or Jane Doe #1 and John or Jane Doe #2.

## VIII.   VICARIOUS LIABILITY

23.     Whenever in this Petition it is alleged that a Defendant did any act or thing, it is meant that Defendant's members, agents, officers, servants, borrowed servants, employees, staff, contractors, or representatives did such act or thing and that the time such act or thing was done, it was done with the full authorization or ratification of that Defendant or was done in the normal and routine course and scope of employment or contract of that Defendant's members, officers, agents, servants, borrowed servants, employees, staff, contractors, or representatives.

24.     If an individual or entity described in this Petition, named or unnamed as a Defendant, is the employee or subsidiary of another named party, then the employer or parent party is vicariously liable for the acts and omissions of such an employee or subsidiary.

## IX.   NOTICE OF CLAIM

25.     Because time was short on the statute of limitations in this matter, Plaintiffs could not provide Defendant with a 60-day presuit notice regarding certain claims, e.g. Texas DTPA claims.

## X.   RULE 28 NOTICE

26.     To the extent that any Defendant is conducting business pursuant to a trade name or assumed name, then suit is brought against them pursuant to the terms of Rule 28, Texas Rules of Civil Procedure, and Plaintiffs hereby demand that upon answering this suit, each Defendant answers in its correct legal name as well as any and all assumed names.

## XI.   STATEMENT OF FACTS

27.     Plaintiff David B. Montgomery lives in Houston, Texas.  He is a transactional attorney in, among other things, the Texas oil and gas industry.  At the time of the incident made the basis of this lawsuit, David was 51 years old.

28.     Plaintiff Tiffany T. Montgomery is David's wife.

29.     David and Tiffany care for two children, G.J. and H.M.

30.     G.J. is Tiffany's son from a previous marriage, and G.J. is David's stepson.

31.     H.M. is David and Tiffany's daughter from their current marriage.

32.     Defendant Bird Rides, Inc. is a company founded in California that does business in Texas, and relevant to this lawsuit, San Antonio, Texas.

33.     Bird is in the business of deploying and renting battery-operated motorized electric scooters (hereinafter referred to as "Bird Scooters") to the general public through an application downloaded and installed onto the smartphones of Bird's customers.

34.     Bird Scooters have no seats or foot pedals.

35.     Bird does not offer helmets for rent along with the Bird Scooter.

36.     A Bird Scooter is operated by rotating the handlebars to steer the scooter's front wheel.  The handlebars also have a brake handle and a handle mechanism ("throttle" or "accelerator") that activates an electric motor to propel the scooter forward.

37.     Bird Scooters can travel at speeds up to approximately 15 miles per hour.

38.     Bird touts to the consumer that its Bird Scooter are a "carbon-free alternative to cars" and "provide an alternative way to get from A to B in areas with fewer transport options" and provides "safety infrastructure " and "safer streets."

39.    But Bird's system of renting scooters including its system in San Antonio, Texas is actually unsafe.  And this lack of safety injured the Plaintiffs.

40.    The following describes how the Bird Scooter rental system actually and unsafely worked in December 2019, and how Plaintiffs suffered injuries because of Bird's failure to provide safe scooters to San Antonio consumers like Plaintiff David Montgomery.

41.    Bird deploys its scooters onto public streets and sidewalks in metropolitan areas including San Antonio, Texas, allowing consumers with a smartphone with internet capabilities to rent a scooter for a fee charged to the consumer's credit or debit card.

42.    Upon completion of a Bird Scooter ride, consumers abandon the rented Bird Scooters at any location of their choosing including onto public and private property to be rented by the next potential customer.

43.    Bird Scooters remain in a constant state of circulation and are only removed from public use to be recharged by "gig chargers," who then redeploy the Bird Scooters back into the public circulation after recharging.

44.    "Gig chargers" are local individuals (here, residents of San Antonio, Texas) who are independent contractors of Bird.  "Gig chargers" are so named because they are paid a small amount of money by Bird per diem for each "gig" – per each scooter recharge.

45.    In addition to the normal wear and tear expected on scooters, including throttle and braking systems, Bird Scooters are left outdoors exposed to the elements, which subjects the Bird Scooters to excessive wear and tear and degradation of the physical integrity of the scooters in the electrical systems, computer control systems, throttle control systems and throttle mechanics, and braking systems and braking mechanics, among other systems.

46.     Given the high degree of wear and tear on Bird Scooters from their public circulation and continued exposure to the outdoor elements, Bird Scooters have electrical and mechanical breakdowns at a higher rate than privately owned scooters.

47.     This higher rate of electrical and mechanical breakdowns was completely foreseeable to Bird.  And yet, Bird wrongfully had no system of routine inspection, maintenance, and/or repair.

48.     Again and wrongfully, Bird Scooters do not undergo regular or routine inspection and maintenance; instead, other than recharging, Bird Scooters are only removed from public circulation if malfunctions are reported directly to Bird.

49.     If a malfunction is reported to Bird, Bird dispatches "gig maintenance" to evaluate and repair minor issues with the scooter such as a flat tire.

50.     "Gig maintenance" workers are local individuals (here, residents of San Antonio, Texas) who are independent contractors of Bird.  "Gig maintenance" is so named because they are paid a small amount of money by Bird per diem for each "gig" – per each scooter repair.

51.     "Gig maintenance" workers are not fully trained scooter mechanics.  They are not trained in properly and fully inspecting, evaluating, and repairing a Bird Scooter's electrical system, computer control system, throttle control system and throttle mechanics, and braking system and braking mechanics.

52.     Sometimes an individual functions as both a "gig charger" and a "gig maintenance" worker.

53.     John or Jane Doe #1 was the last San Antonio, Texas resident "gig charger" to recharge and provide repairs to the Bird Scooter in question in this case prior to the scooter's December 2019 rental by Plaintiff David Montgomery.

54.     John or Jane Doe #2 was the last San Antonio, Texas resident "gig maintenance" worker to provide repairs to the Bird Scooter in question in this case prior to the scooter's December 2019 rental by Plaintiff David Montgomery.

55.     John or Jane Doe #3 was the last San Antonio, Texas resident supervisor of the individual (John or Jane Doe #1 and/or #2) who last provided charging and/or repairs to the Bird Scooter in question in this case prior to the scooter's December 2019 rental by Plaintiff David Montgomery.

56.     On December 28, 2019, David rented a Bird Scooter in San Antonio, Texas during his train stopover from a planned vacation Amtrak trip from Houston, Texas to West Texas.

57.     David's stepson G.J. also rented a separate Bird Scooter.

58.     In San Antonio, Texas, as with other Bird cities, Bird does not have specific rental sites; consumers just abandon the scooters when they reach their destination, and a new consumer rents them simply by finding one and downloading the Bird app onto a smartphone.

59.     And so, in San Antonio, Texas on December 28, 2019, Bird Scooters were scattered all over the city streets.  David and G.J. spotted two Bird Scooters right outside the train, on the Amtrak landing.  In other words, the "site" of rental was visible about twenty feet from the stopped train.

60.    After completing the app-based rental process, David and G.J. boarded their respective Bird Scooters and toured the nearby area including The Alamo.  They both kept to paved roads and had no issues with road or surface hazards.

61.    While returning to the train station to end the rentals and get back aboard the train, David's Bird Scooter began a series of rapid decelerations and accelerations – effectively lurching the subject Bird Scooter to and fro.  This lurching resulted in David initially being thrown forward against the handlebar area (with resulting chest contusion found in the medical records) and then immediately thereafter backward and off the subject Bird Scooter, wherein David struck the ground (blunt trauma to the head) and among other injuries suffered a traumatic brain injury (TBI) with documented brain bleeds in the medical records.

62.    The Bird Scooter's lurching to and fro was due to a computer system, electrical system, throttle system, and/or braking system malfunction of David's scooter which in turn was due to Defendants' inadequate inspection, evaluation and repair of David's particular scooter prior to David's ride.

63.    Had proper inspection, evaluation, and maintenance been performed by Defendants on David Montgomery's Bird Scooter, including routine inspection, evaluation, and maintenance, Defendants would have discovered this Bird Scooter's malfunction and/or propensity to malfunction that caused the lurching to and fro in David's rental scooter, and thereby either removed the scooter from commerce or properly and fully repaired it. Either would have prevented the incident that injured David.

64.    These events – the lurching to and fro of a rental scooter and subsequent injuries – were entirely unexpected and unforeseeable to David, but because of the previously described Bird system that lacked routine inspections, evaluations and/or repairs of Bird Scooters, were entirely foreseeable to Bird Rides, Inc. and its employees, agents, representatives and/or contractors, including local San Antonio Bird contractors John or Jane Doe #1, John or Jane Doe #2, and John or Jane Doe #3.

65.    911 was called, and David, already with altered mental status, was taken to University Health System San Antonio by San Antonio Fire-EMS (ambulance).  A CT scan of David's head revealed brain bleeds from the blunt trauma to his head.  David was admitted to the ICU and began a long and arduous recovery and rehabilitation process.

66.    David was transferred back to Houston where he was an inpatient at the nationally respected TIRR Memorial Hermann Hospital.[2]

67.    David then continued outpatient rehabilitation.

68.    As a direct result of the subject Bird Scooter's malfunction due to lack of proper inspection, evaluation, maintenance and repair, David suffered from the following injuries, among others (all documented in the medical records), including sequela of his traumatic brain injury (TBI) that are consistent with what is extensively reported in peer reviewed medical literature:

     a.  Blunt force trauma to the chest

---

[2] See https://en.wikipedia.org/wiki/TIRR_Memorial_Hermann and https://memorialhermann.org/services/specialties/tirr/about-us for descriptions of TIRR and its academic affiliations with two of Texas's medical schools, Baylor College of Medicine and UT-Houston Medical School.

b.  Blunt force trauma to the back of the head

c.  Traumatic brain injury (TBI) with at least two documented posterior brain bleeds resulting in:

d.  Prolonged hemiparesis (right side including arm and leg)

e.  Mobility dysfunction (inability to ambulate normally)

f.  Hypersomnolence (difficulty in waking from sleep)

g.  Acute and subacute loss of cognitive capabilities

h.  Acute and subacute emotional lability

i.  Acute and subacute personality change (irritable, distant affect)

69.  While David's right leg hemiparesis and ambulatory difficulty have partially resolved, he still suffers from physical injuries related to the Bird Scooter incident.  Directly related to his head trauma and TBI, David to this day has the following:

a.  Intermittent right arm hemiparesis

b.  Lack of fine motor skills right arm (for instance, affecting his ability to write and sign documents – David is right arm dominant)

c.  Cognitive issues (memory and concentration issues; mood swings)

d.  Olfactory nerve damage (lack of sense of smell)

70.  These permanent injuries are not all-inclusive.  But they are significant, especially for a transactional attorney like David.

71.  Again, while David is somewhat "better" today than at the time of the incident, he has not and will not fully recover from his injuries.  David has the following ongoing issues, among others, related to his traumatic brain injury: memory and concentration

problems, emotional lability (highs and lows disproportionate to what is causing the high or low), clumsiness when walking, and decreased fine motor skills in his hands, including decreased ability to write and/or sign his name.

72.     In October 2021, David's Houston neurologist Dr. Danny Chachere ordered an MRI scan to see how David's brain objectively looked since it had been about two years since David's December 2019 brain trauma.  Specifically, per the medical records, Dr. Chachere ordered the MRI for "traumatic brain injury, with loss of consciousness of 6 hours to 24 hours, sequela."  The MRI revealed:

> "large encephalomalacic cavities involving much of the anterior aspect of both frontal lobes. This is most severe along the floor of the anterior cranial fossa. There is extensive volume loss consistent with severe prior trauma. There are also smaller areas of encephalomalacic change, posttraumatic changes involving the anteroinferior margin of both temporal lobes. There is also a moderate to moderately large encephalomalacic cavity from old trauma related to the left cerebral hemisphere near the vertex of the cranium. The changes all appear to be chronic. There is volume loss and encephalomalacic changes. There is moderate to moderately advanced generalized atrophy, also likely related to patient's prior trauma.

73.     "Encephalomalacia" describes the appearance of the brain on MRI and literally means "softening of the brain."  It is due to the brain tissue dying in that area and being replaced by fluid.

74.     In other words, David's October 2021 MRI revealed extensive loss of brain tissue and shrinking of the brain due to the December 2019 traumatic brain injury from his fall from the Bird Scooter.

75.     David's abilities to be a productive attorney, husband, stepfather, and father have already been affected by his December 2019 brain injury. David is fortunately, for now,

compensating far more than most people in their early 50's can compensate.  But with the effects of aging, David's ability to compensate will be lost and he will become considerably more affected by the loss of brain tissue from the December 2019 injury.

76.     David's physical injuries are thus DEVASTATING to David, Tiffany, G.J. and H.M. given that at the time of the incident in December 2019, David was in his most productive work years and his most productive years as husband and stepfather, and father, and because David's most productive years would lie ahead had he not suffered a brain injury.

77.     David's injuries and the injuries to Tiffany, G.J. and H.M. are PERMANENT and will only INCREASE with time as David's physiological ability to compensate is lost due to the effects of aging.

78.     Bird Rides, Inc. and Defendants John or Jane Doe #1, John or Jane Doe #2, and John or Jane Doe #3 each had a duty to David, a consumer renting a Bird Scooter, to prevent these injuries by proper inspection, evaluation and maintenance.  Bird Rides, Inc. and the Doe Defendants each violated their duties.

79.     Bird Rides, Inc. had a duty to David, a consumer renting a Bird Scooter, to prevent these injuries by routine inspection, evaluation and maintenance.  Bird Rides, Inc. violated this duty.

## XII.   CAUSES OF ACTION

80.     Again, Plaintiffs are making no claims founded in products liability, e.g. faulty design or manufacturer of the subject Bird Scooter.

81.     Plaintiffs are making no Federal claims, e.g. claims founded or based on the United States Constitution or any Federal law, rule, or regulation.

82.     Instead, based upon and realleging the above introductory paragraphs, statement of facts, and allegations, which are all adopted and incorporated into each and every cause of action ("Count") below as if fully recounted therein, Plaintiffs assert the following State of Texas causes of action – Counts – against Defendants:

### COUNT 1
### NEGLIGENCE

### Bird Rides, Inc.

83.     Defendant Bird Rides, Inc. had a duty to provide the actual scooter rental goods and services that were promised to or reasonably expected by Plaintiff David Montgomery, including a properly inspected, evaluated, maintained, and repaired scooter that was therefore safe to ride.

84.     Insofar as this duty, Defendant Bird Rides, Inc. d/b/a Bird, including its parent and subsidiary companies, employees, agents, representatives, and/or contractors including local San Antonio personnel, unlawfully breached its duty and thus was negligent in one or more respects as described above and by failing to do that which an business entity of ordinary and/or reasonable prudence would have done under the same or similar circumstances or doing that which a business entity of ordinary and/or reasonable prudence would not have done under the same or similar circumstances.

85.     Generally, in addition to what is described above, Defendant Bird Rides, Inc. d/b/a Bird, including its parent and subsidiary companies, employees, agents, representatives,

and/or contractors including local San Antonio personnel, were negligent by failing to exercise ordinary and/or reasonable care and diligence in keeping the subject Bird Scooter reasonably safe for those intended to use it, including Plaintiff David Montgomery. Bird Rides, Inc. and its employees, agents, representatives and/or contractors, including local San Antonio personnel, were negligent and failed to exercise ordinary and/or reasonable care and diligence and therefore:

a. Failed to properly protect Bird Scooters, including the subject Bird Scooter rented by David Montgomery, from the elements of nature and thus from excessive wear and tear;

b. Failed to properly and routinely inspect, routinely evaluate and provide routine maintenance to all San Antonio Bird Scooters, including the subject Bird Scooter rented by Plaintiff David Montgomery;

c. Failed to properly inspect, evaluate and provide maintenance of any sort to the subject Bird Scooter rented by Plaintiff David Montgomery;

d. Failed to keep the subject Bird Scooter reasonably safe for those intended to use it, including Plaintiff David Montgomery;

e. Failed to promulgate or enforce policies and procedures to effectuate items a-d immediately above;

f. Failed to warn Plaintiff David Montgomery of the risks to the rider due to the failures to implement the items a-e immediately above.

86.   These negligence claims are focused on Defendant Bird Rides, Inc's and its parent entities, subsidiaries, employees, agents, representatives and/or contractors, including local

San Antonio personnel, when failing to have a Bird Scooter system-wide rental scooter inspection and maintenance system, and therefore failing to provide proper mechanical, electrical, throttle, braking, and/or software maintenance and repair of the subject Bird Scooter, resulting in, for instance, the subject Bird Scooter's throttle and/or brake system intermittently malfunctioning due to lack of repair and maintenance. This in turn resulted in rapid deceleration and acceleration of the subject Bird Scooter – effectively lurching the subject Bird Scooter to and fro. This lurching resulted in Plaintiff David Montgomery initially being thrown forward against the handlebar area (with resulting chest contusion found in the medical records) and then immediately thereafter thrown backwards and off the subject Bird Scooter, wherein Mr. Montgomery struck the ground and among other injuries suffered a traumatic brain injury (TBI) with documented brain bleeds in the medical records.

87.     Bird Rides, Inc.'s injuries to Plaintiffs were foreseeable to Bird Rides, Inc. and its parent entities, subsidiaries, employees, agents, representatives and/or contractors including local San Antonio personnel as they were in the business of providing electric scooters to the citizens of Texas and San Antonio for monetary compensation, had intimate knowledge of the scooters themselves and the maintenance and repairs needed, and therefore had a duty to provide proper and routine inspection, evaluation , maintenance, and repair of such scooters – making them safe to ride.

88.     Such negligence on the part of Defendant Bird Rides, Inc. d/b/a Bird, including its parent and subsidiary companies, employees, agents, representatives, and/or contractors including local San Antonio personnel, has proximately caused Plaintiffs' injuries and

resulting damages.  But for Bird Rides, Inc.'s breach of its duty to Plaintiff David

Montgomery, Plaintiffs injuries would not have occurred.

### The Doe Defendants (John or Jane Does #1-3)

89.     The Doe Defendants each had a duty to provide the actual scooter rental goods and

services that were promised to or reasonably expected by Plaintiff David Montgomery,

including a properly inspected, evaluated, maintained, and repaired scooter that was

therefore safe to ride.

90.     The Doe Defendants unlawfully breached their duties and thus were negligent in

one or more respects as described above and by failing to do that which individuals of

ordinary and/or reasonable prudence would have done under the same or similar

circumstances or doing that which individuals of ordinary and/or reasonable prudence

would not have done under the same or similar circumstances.

91.     Generally, in addition to what is described above, the Doe Defendants were

negligent by failing to exercise ordinary and/or reasonable care and diligence in keeping the

subject Bird Scooter reasonably safe for those intended to use it, including Plaintiff David

Montgomery. The Doe Defendants were negligent and failed to exercise ordinary and/or

reasonable care and diligence and therefore:

> a. Failed to properly protect Bird Scooters, including the subject Bird Scooter
>    rented by David Montgomery, from the elements of nature and thus from
>    excessive wear and tear;

b.  Failed to properly and routinely inspect, routinely evaluate and provide routine maintenance to all San Antonio Bird Scooters, including the subject Bird Scooter rented by Plaintiff David Montgomery;

c.  Failed to properly inspect, evaluate and provide maintenance of any sort to the subject Bird Scooter rented by Plaintiff David Montgomery;

d.  Failed to keep the subject Bird Scooter reasonably safe for those intended to use it, including Plaintiff David Montgomery;

e.  Failed to follow policies and procedures to effectuate items a-d immediately above.

f.  Failed to warn Plaintiff David Montgomery of the risks to the rider due to the failures to implement the items a-e immediately above.

92.  These negligence claims are focused on the Doe Defendants when participating in Bird Rides, Inc.'s inadequate system-wide rental scooter repair system, and therefore failing to provide proper mechanical, electrical, throttle, braking, and/or software maintenance and repair of the subject Bird Scooter, resulting in, for instance, the subject Bird Scooter's throttle and/or brake system intermittently malfunctioning due to lack of repair and maintenance. This in turn resulted in rapid deceleration and acceleration of the subject Bird Scooter – effectively lurching the subject Bird Scooter to and fro. This lurching resulted in Plaintiff David Montgomery initially being thrown forward against the handlebar area (with resulting chest contusion found in the medical records) and then immediately thereafter thrown backwards and off the subject Bird Scooter, wherein Mr. Montgomery

struck the ground and among other injuries suffered a traumatic brain injury (TBI) with documented brain bleeds in the medical records.

93.     The Doe Defendants' injuries to Plaintiffs were foreseeable to the Doe Defendants as they were in the business of providing charged and maintained electric scooters to the citizens of Texas and San Antonio for monetary compensation, and therefore had a duty to safely provide such scooters to consumers such as Plaintiff David Montgomery.

94.     Such negligence on the part of the Doe Defendants has proximately caused Plaintiffs' injuries and resulting damages. But for the Doe Defendants' breaches of their duties to Plaintiff David Montgomery, Plaintiffs injuries would not have occurred.

## COUNT 2
## GROSS NEGLIGENCE

### Bird Rides, Inc.

95.     The acts and omissions listed in Count 1 above by Defendant Bird Rides, Inc. d/b/a Bird, including its parent and subsidiary companies, employees, agents, representatives, and/or contractors including local San Antonio personnel, acts and omissions described in the above facts and allegations, as well as under Count 1 of this Petition, all of which Plaintiffs wholly adopt and incorporate by reference into this Count 2, involved an extreme degree of risk, when viewed objectively from this Defendant's standpoint at the time and considering the probability and magnitude of the potential harm.  Defendant Bird Rides, Inc. d/b/a Bird, including its parent and subsidiary companies, employees, agents, representatives, and/or contractors including local San Antonio personnel had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious

indifference to the rights, safety or welfare of the Plaintiffs, including Plaintiff David Montgomery.

96.    Defendant Bird Rides, Inc. d/b/a Bird intended, knew, was substantially aware, should have known, acted in callous and reckless disregard, and/or was consciously indifferent to the obvious yet extreme harm that Plaintiff David Montgomery would suffer if Bird provided unsafe scooters – motor vehicles traveling at significant speed – to its customers.

97.    Defendant Bird Rides, Inc. d/b/a Bird's acts and omissions, including the acts and omissions of its parent and subsidiary companies, employees, agents, representatives, and/or contractors including local San Antonio personnel, constituted gross negligence, and proximately caused Plaintiffs' injuries and resulting damages.

### The Doe Defendants (John or Jane Does #1, 2, and 3)

98.    The acts and omissions described in the above facts and allegations, as well as under Count 1 of this Petition, all of which Plaintiffs wholly adopt and incorporate by reference into this Count 2, involved an extreme degree of risk, when viewed objectively from these Defendants' standpoint at the time and considering the probability and magnitude of the potential harm.  The Doe Defendants had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety or welfare of the Plaintiffs, including Plaintiff David Montgomery.

99.    The Doe Defendants intended, knew, were substantially aware, should have known, acted in callous and reckless disregard, and/or were consciously indifferent to the obvious

yet extreme harm that Plaintiff David Montgomery would suffer if the Doe Defendants

provided unsafe scooters – motor vehicles traveling at significant speed – to Bird customers.

100.  The Doe Defendants' acts and omissions constituted gross negligence, and

proximately caused Plaintiffs' injuries and resulting damages.

### COUNT 3
### VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICE ACT AND TEXAS COMMON LAW BUSINESS PRACTICES (BIRD RIDES, INC. ONLY)

101.    Another reason it has become necessary to file this lawsuit is because Defendant

Bird Rides, Inc. d/b/a Bird violated both the Texas Deceptive Trade Practices Act and

Texas common law business practices.

102.    Plaintiffs reallege and incorporate by reference all of the preceding paragraphs for all

purposes, including prior Counts, the same as if set forth verbatim.

103.    Plaintiff David Montgomery was a "consumer" as defined by the Texas Deceptive

Trade Practice Act ("DTPA") because Plaintiff David Montgomery is an individual who

sought goods and services from Bird Rides, Inc. by lease (rental).

104.    Defendant Bird Rides, Inc. is a corporation doing business in Texas that can be sued

under the DTPA.  In December 2019, Defendant Bird Rides, Inc. supplied goods and

services to consumers in Texas as defined by the Texas Deceptive Trade Practices Act.

105.    It was impracticable for Plaintiffs to give Defendant Bird Rides, Inc. written notice

under Texas Business & Commerce Code section 17.505(a) because Plaintiffs needed to file

this suit to prevent the expiration of the statute of limitations. Therefore, written notice was

not required.

106.     Defendant Bird Rides, Inc. violated the DTPA when it falsely represented to the consumer, including Plaintiff David Montgomery, that its scooters were workable, safe and for rent to ride around San Antonio.

107.     Defendant Bird Rides, Inc.'s violations of the DTPA include engaging in false, misleading, or deceptive acts that Plaintiff David Montgomery relied on to Plaintiff David Montgomery's detriment.

108.     Defendant Bird Rides, Inc. also violated the DTPA when it breached an express or implied warranty.

109.     Defendant Bird Rides, Inc. also violated the DTPA when it engaged in an unconscionable action or course of action that, to Plaintiff David Montgomery's detriment, took advantage of Plaintiff David Montgomery's lack of knowledge, ability, experience, or capacity to a grossly unfair degree.

110.     Defendant Bird Rides, Inc.'s wrongful conduct was a producing cause of Plaintiffs' injuries, which resulted in damages delineated later in this Petition, but such damages include mental anguish and treble economic damages, as Defendant Bird Rides, Inc. acted both knowingly and intentionally.

111.     Plaintiffs are entitled to recover reasonable and necessary attorney fees for prosecuting this suit under Texas Business & Commerce Code section 17.50(d).

112.     Further elaboration of Defendant Bird Rides, Inc.'s violations of the DTPA are:

113.     Defendant Bird Rides, Inc. created a business model that failed to include routine inspection, evaluation, and maintenance of its scooters.

114.    Instead, Bird Rides, Inc. created a business model wherein non-expert "gig mechanics" would service Bird Scooters only when Bird was notified, and thus only intermittently and incompletely servicing and maintaining such scooters.

115.    Bird Rides, Inc.'s representations that Bird Scooters were workable and safe, including those as described in this Petition, were false, misleading and deceptive in that Bird Scooters were actually subject to excessive wear and tear, had a greater propensity to malfunction during a ride, and were thus unreliable and unsafe.

116.    The purpose behind Bird Rides, Inc's misleading and deceptive representations of workability and safety was to induce consumers like Plaintiff David Montgomery into relying on Bird Rides, Inc.'s promises to provide workable and safe alternative to automobile transportation, and thus to rent the scooter.  Thus, the goal of Bird Rides, Inc.'s deception was to dupe consumers like Plaintiff David Montgomery into renting an unreliable and unsafe, but cheaply maintained and thus profitable, scooter.

117.    These representations violate, among other things, subsection (a) of Section 17.46 of the Texas Business & Commerce Code (Texas Deceptive Trade Practices Act, as well as the "laundry list" of Section 17.46 of the Texas Business & Commerce Code (Texas Deceptive Trade Practices Act), including but not limited to subsections (b)(2), (b)(5), (b)(7), (b)(24) of Section 17.46 of the Texas Business & Commerce Code (Texas Deceptive Trade Practices Act).

118.    Plaintiff David Montgomery relied upon Bird Rides, Inc.'s representations to Plaintiffs' detriment.

119.   Defendant Bird Rides, Inc.'s acts and practices also violated Texas Business & Commerce Code section 17.50 in two ways.  First, because Bird Rides, Inc.'s business model of lack of proper inspection, evaluation, and maintenance resulted in a breach of implied warranty to Plaintiff David Montgomery that his Bird Scooter would be safe to operate, and second, because as the preceding paragraphs above delineate violations of the Texas Deceptive Trade Practices Act 17.46 (b), such violations are also direct violations of TBC section 17.50.

120.   Defendant Bird Rides, Inc.'s engaged in an unconscionable course of action by falsely representing to Plaintiff David Montgomery that a ride on an electric Bird Scooter would be safe insofar as the scooter itself would not potentially malfunction and pitch the rider to and fro and throw the rider off the vehicle.

121.   By such conduct, Defendants Bird Rides, Inc. took advantage of Plaintiff David Montgomery's lack of knowledge, ability, experience, expertise or capacity, to David Montgomery's detriment, to a grossly unfair degree.

122.   Defendant Bird Scooter's conduct as described above was a producing cause of Plaintiffs' economic damages, including the necessity of hiring an attorney to evaluate legal remedies and to avoid extinguishment of certain legal remedies as time-barred in Texas. These economic damages are well within the jurisdictional limits of this Court.

123.   Defendant Bird Rides, Inc.'s conduct described above was committed knowingly and intentionally. Bird Rides, Inc. was actually aware, at the time of the conduct, of the falsity, deception, and unfairness of the conduct about which Plaintiffs complain.

124.    As a direct result of Bird Rides, Inc.'s knowing and intentional misconduct, Plaintiffs suffered mental anguish. In particular, Plaintiffs suffered anxiety, sleeplessness, despair, hopelessness, depression, intense feelings of humiliation and belittlement, an abnormal sense of inferiority, and excessive and repeated loss of appetite and sleep.

125.    Accordingly, Defendant Bird Rides, Inc. is liable to Plaintiffs for mental anguish damages and additional liquidated and/or other damages of up to three times the amount of economic damages as permitted by the Texas Deceptive Trade Practices Act.

126.    Plaintiffs are entitled to recover reasonable and necessary attorney's fees under the Texas Deceptive Trade Practices Act; Plaintiffs hereby seek recovery of such fees.

127.    Because of the foregoing acts and omissions, including deceptive acts by Defendant Bird Rides, Inc., Bird Rides, Inc. also committed common law misrepresentations and, further, breached this Defendant's common law duty of good faith and fair dealing. Defendants' breach of this duty proximately caused injury to Plaintiffs, including the economic damages described throughout this Petition.  Plaintiffs are entitled to exemplary damages and attorney's fees for Defendants' breach.

## COUNT 4
## BREACH OF IMPLIED CONTRACT
## (ALL DEFENDANTS)

128.    Plaintiffs adopt and re-allege all paragraphs set forth hereinabove as if fully set out herein.

129.    When renting his Bird Scooter, Plaintiff David Montgomery sought and reasonably expected to rent a safe and workable Bird Scooter – one that would not malfunction due to

excessive wear and tear and/or failure of proper inspection, evaluation, and maintenance by Defendants.

130.    A functional and safe Bird Scooter was a reasonable, material and significant expectation of Plaintiff David Montgomery when renting the Bird Scooter;

131.    Defendants did not obtain a written contract containing the material element of "safe scooter" from Plaintiff David Montgomery.

132.    Defendants did not obtain an oral contract containing the material element "safe scooter" from Plaintiff David Montgomery.

133.    Instead, Plaintiff David Montgomery's and Defendants' actions and conduct created a valid implied contract.

134.    Plaintiff David Montgomery performed under the implied contract, as he paid for the scooter rental.

135.    Plaintiff David Montgomery was justified in understanding that the Bird Scooter he rode was safe.

136.    No reasonable Plaintiff (or renter) would have agreed to rent the Bird Scooter if Defendants had notified such Plaintiff (or renter) was improperly inspected, evaluated, repaired, or maintained; alternatively, no reasonable Plaintiff (or renter) would have agreed to rent the Bird Scooter if Defendants had notified such Plaintiff (or renter) that the Bird Scooter rented was not routinely inspected, routinely evaluated, routinely repaired, or routinely maintained.

137.     Plaintiff David Montgomery and Defendants had a mutual understanding that renters of Bird Scooters, including Plaintiff David Montgomery renting the subject Bird Scooter, would expect a scooter that was safe to ride.

138.     Defendants provided a Bird Scooter to Plaintiff David Montgomery that was unsafe. Defendants knew that their failure to routinely inspect, evaluate, maintain, and repair Bird Scooters was a material breach.

139.     Defendants' supply of an unsafe Bird Scooter to Plaintiff David Montgomery was a breach of implied contract which damaged Plaintiffs not merely by unjust monies paid to Defendants but also by Plaintiffs' injuries and damages including economic damages, all foreseeable to Defendants when they breached, and attorney's fees spent due to Defendants' breach.

140.     Under Texas law, Plaintiff David Montgomery is entitled to recover actual damages for breach of implied contract and is also entitled to recovery attorney's fees.

## COUNT 5
## BREACH OF EXPRESS AND/OR IMPLIED WARRANTY
## IN THE LEASE OF GOODS (TEXAS UCC § 2A.210)
## (BIRD RIDES, INC. ONLY)

141.     Plaintiffs re-allege and incorporate herein by all preceding paragraphs and Counts as if fully restated verbatim herein.

142.     In advertising and renting Bird Scooters and among other things representing and describing the character and quality of the subject Bird Scooter thereby to Plaintiff David Montgomery prior and during the rental, the safety of the subject Bird Scooter became a basis for the bargain (rental).

143.     Defendant Bird Rides, Inc. owed specific legal duties to David Montgomery including the duty to keep the subject Bird Scooter in suitable order and repair for the purposes for which it was rented and free of malfunction during a ride.

144.     Defendant Bird Rides, Inc. breached these duties by renting the unsafe Bird Scooter to Plaintiff David Montgomery while having actual and constructive knowledge of the Bird Scooter being unsafe or high potential for being unsafe.

145.     As a direct and proximate result of Defendant Bird Rides, Inc.'s actions and/or inactions, Plaintiff David Montgomery sustained significant and permanent injuries resulting in damages to all Plaintiffs, including past and future: pain and suffering, mental anguish, economic damages (including past and future lost wages, past and future medical expenses, and past and future pecuniary losses to family members), and other damages in an aggregate amount in the millions of dollars.

### COUNT 6
### BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE IN THE LEASE OF GOODS (TEXAS UCC § 2A.213) (ALL DEFENDANTS)

146.     Plaintiffs re-allege and incorporate herein by all preceding paragraphs and Counts as if fully restated verbatim herein.

147.     Defendants (for this Count, all Defendants) owned, rented or maintained consumer goods, the Bird Scooters, deployed by Defendants in San Antonio, Texas.

148.     Defendants at all times relevant herein, knew and/or had reason to know that the riders of the Bird Scooters, including Plaintiff David Montgomery, intended to use the Bird

Scooters for the particular purposes alleged above, including, but limited to, as a reasonable and safe means of transportation.

149.    Defendants, at all times, knew and/or should have known that the riders of the Bird Scooters, including Plaintiff David Montgomery, were relying on the skill and judgment of the Defendants to provide a scooter that was suitable for that particular purpose.

150.    Plaintiff David Montgomery justifiably relied on the skill and judgment of Defendants, known at the time of rental and unknown (e.g. anyone who provided maintenance and repairs), and particularly as to Defendant Bird Rides, Inc., as Bird Rides, Inc. held itself out generally as an experienced provider of rental scooters as a means of transportation and specifically as a safe and reliable means of transportation.

151.    By virtue of the foregoing and because, among other things, the Bird Scooters were not routinely inspected, evaluated, and maintained and, further, were not intended by their manufacturers for repeated excessive use in rentals to public consumers and/or constant exposure to the outdoor elements found in San Antonio, Defendants provided a Bird Scooter to Plaintiff David Montgomery that was unfit for its particular purpose.  Plaintiffs allege that Bird Scooters in San Antonio, including the subject Bird Scooter, were not suitable for said intended and/or particular purposes.

152.    As a proximate and direct result of the above, the Plaintiffs have suffered and incurred injuries and damages as described elsewhere in this Petition, and injuries and damages both individually and collectively in the aggregate, well in excess of this Court's jurisdictional minimum.

## COUNT 7
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## IN THE LEASE OF GOODS (TEXAS UCC § 2A.212)
## (ALL DEFENDANTS)

153.    Plaintiffs re-allege and incorporate herein by all preceding paragraphs and Counts as if fully restated verbatim herein.

154.    Defendants (for this Count, all Defendants) at all times relevant herein were in the business of deploying, renting, and/or maintaining Bird Scooters for use by the general public.

155.    Plaintiff David Montgomery had a reasonable expectation that the subject Bird Scooter he rented in San Antonio, Texas was not defective (it was safe) and was fit for ordinary purposes.

156.    However, the Bird Scooters for rent in San Antonio, Texas, including the subject Bird Scooter, were unsafe: they were not of the same quality as those generally acceptable in the trade and/or were not fit for the ordinary purposes for which such scooters are used, as alleged within this Petition but including because the Bird Scooters were not routinely inspected, evaluated, and maintained and, further, were not intended by their manufacturers for repeated excessive use in rentals to public consumers and/or constant exposure to the outdoor elements found in San Antonio, Plaintiffs allege that Bird Scooters in San Antonio, including the subject Bird Scooter.

157.    As a proximate and direct result of the above, the Plaintiffs have suffered and incurred injuries and damages as described elsewhere in this Petition, and injuries and

damages both individually and collectively in the aggregate, well in excess of this Court's jurisdictional minimum.

## XIII.  DAMAGES

### Plaintiff David Montgomery

158.  Based on the above introductory paragraphs, statements of fact, allegations, and causes of action (Counts), which are all adopted and incorporated into each category of damages below as if fully recounted therein, and because damages suffered were a direct and proximate result of the negligence of Defendants, Plaintiff David Montgomery seeks certain categories of damages from Defendants.

159.  These damages apply to Counts 1-7 above, individually and in aggregate.

160.  As a direct and proximal result of the actions and/or inactions of Bird Rides, Inc. and its employees, agents, representatives, and/or contractors, including local San Antonio personnel, and as a direct and proximal result of the actions and/or inactions of the Doe Defendants, Plaintiff David Montgomery's injuries described above give rise to the following categories of damages, not all inclusive, that may be pursued in litigation by Plaintiff David Montgomery:

     a.  Past and, in reasonable probability, future medical expenses;

     b.  Past and, in reasonable probability, future loss of wage earning capacity;

     c.  Past and, in reasonable probability, future physical impairment;

     d.  Past and, in reasonable probability, future disfigurement;

     e.  Past and, in reasonable probability, future mental anguish

     f.  Past and, in reasonable probability, future physical pain and suffering;

g.  Statutory damages (e.g. treble damages and other damages specific to the Texas Deceptive Trade Practices Act);

h.  Exemplary damages as Defendants are guilty of misconduct which was committed knowingly, intentionally, maliciously, wantonly, in reckless and callous disregard of the legitimate rights of Plaintiffs, and/or was gross negligence;

i.  Attorney's fees as available under the Texas Deceptive Trade Practices Act, Chapter 38 of the Texas Civil Practice and Remedies Code, and other statutory authorization for certain of Plaintiffs' other common law non-tort claims delineated under the Section XII Claims/Counts above; attorney's fees include but are not limited to reasonable fees for preparation and prosecution of this action, as well as reasonable fees for any and all necessary prosecution and/or appeals to other courts;

j.  Pre- and post-judgment interest;

k.  Costs of suit; and

l.  Any other damages allowed under the law and proved in the trial of this case.

161.  The above damages encompass not only the immediate incident, hospitalization, and physical rehabilitation of Plaintiff David Montgomery as it unfolded, but also with encompass the devastating impact the incident and injures have had on Plaintiff David Montgomery's life and in reasonable probability will have on the remainder of his life, including incident-related medical conditions that will worsen with aging, diminished life enjoyment and freedom of movement, and the anguish, fear and anxiety associated with the

various therapies, medical procedures, and treatment that Plaintiff David Montgomery believes will be necessary to properly treat these conditions.

### Plaintiff Tiffany T. Montgomery
### And the Montgomery minor children G.J. and H.M.

162.  Based on the above introductory paragraphs, statements of fact, allegations, and causes of action (Counts), which are all adopted and incorporated into each category of damages below as if fully recounted therein, and because damages suffered were a direct and proximate result of the negligence of Defendants, Plaintiff Tiffany Montgomery, individually and on behalf of the minor children G.J. and H.M. seeks certain categories of damages from Defendants.

163.  These damages apply to Counts 1-7 above, individually and in aggregate.

164.  As a direct and proximal result of the actions and/or inactions of Bird Rides, Inc. and its employees, agents, representatives, and/or contractors, including local San Antonio personnel, and as a direct and proximal result of the actions and/or inactions of the Doe Defendants,, the incident made the basis of this lawsuit described above gives rise to the following categories of damages, not all inclusive, that may be pursued in litigation by Plaintiff Tiffany T. Montgomery, individually and on behalf of the minor children G.J. and H.M.

   a.   Loss of inheritance;

   b.   Past and future loss of household services;

   c.   Past and future pecuniary losses from lifetime contributions Mr. Montgomery would have made to these claimants;

d.  Past and future mental anguish;

e.  Past and future loss of consortium;

f.  Past and future loss of companionship and society;

g.  Statutory damages (e.g. treble damages and other damages specific to the Texas Deceptive Trade Practices Act);

h.  Exemplary damages as Defendants are guilty of misconduct which was committed knowingly, intentionally, maliciously, wantonly, in reckless and callous disregard of the legitimate rights of Plaintiffs, and/or was gross negligence;

i.  Attorney's fees as available under the Texas Deceptive Trade Practices Act, Chapter 38 of the Texas Civil Practice and Remedies Code, and other statutory authorization for certain of Plaintiffs' other common law non-tort claims delineated under the Section XII Claims/Counts above; attorney's fees include but are not limited to reasonable fees for preparation and prosecution of this action, as well as reasonable fees for any and all necessary prosecution and/or appeals to other courts;

j.  Pre- and post-judgment interest;

k.  Costs of suit; and

l.  Any other damages allowed under the law and proved in the trial of this case.

## XIV.  REQUEST FOR INSPECTION OF SUBJECT BIRD SCOOTER

165.  Pursuant to Rule 196.1 of the Texas Rules of Civil Procedure, Plaintiffs request inspection of the subject Bird Scooter that was rented by Plaintiff David Montgomery on

December 28, 2019 in San Antonio, Texas.  Plaintiffs will work with Defendant Bird Rides, Inc. to conduct this inspection at a mutually agreeable location, date, and time.  At such an inspection, Plaintiffs and/or Plaintiffs' expert(s) will inspect, test, measure, survey, photograph, videotape, or otherwise evaluate the subject Bird Scooter.

## XV.    APPLICATION FOR PERMANENT INJUNCTION

166.    By failing to provide routine inspection, evaluation, and maintenance to its fleet of Texas Bird Scooters, Defendant Bird Rides, Inc. is a continued threat to the safety and well being of Plaintiffs as well as the citizens of Texas.

167.    Insofar as the citizens of Texas are concerned, any Texas consumer renting a Bird Scooter is at risk of serious bodily injury due to Bird Scooter malfunctions that would not exist if Bird Rides, Inc. conducted routine inspections, evaluations, and maintenance of its Bird Scooter fleet.

168.    Insofar as Plaintiffs are concerned, Plaintiffs are at risk of such malfunctioning Bird Scooters because Plaintiffs, like all Texas citizens, are or will be pedestrians or automobile drivers in Texas cities with Bird Scooters, and a malfunctioning Bird Scooter places Plaintiffs at risk of severe bodily injury or property damage in such locations.

169.    Plaintiffs are entitled on trial to damages and a permanent injunction.  Plaintiffs therefore ask the Court to enjoin Defendant Bird Scooter from two acts: (1) conducting business and/or interacting with Plaintiffs in any fashion, and (2) conducting business and/or interacting with any Texas citizen in any fashion.  Plaintiffs' request for an injunction is authorized by Texas Civil Practice and Remedies Code §65.011 (1), (2), (3) and (5).

170.  Defendant Bird Rides, Inc.'s business model of foregoing routine inspections, evaluations, and maintenance of its fleet of Texas Bird Scooters is not only woefully inadequate in lawfully, honestly and fairly preventing Bird Scooter malfunction incidents, but also is a business model founded on saving money at the expense of Plaintiffs and Texas citizens.  Such acts violate Texas state laws such as the Texas Deceptive Trade Practice Act and Texas' common law regarding commerce, and such acts are intentional acts by Bird Rides, Inc.

171.  Additional facts of the underlying case that give rise to the need for a permanent injunction are delineated in the preceding introductory paragraphs, statement of facts, allegations, and claims sections of this Petition.  Therefore, the entirety of this Petition is incorporated fully into this application for permanent injunction as if reiterated verbatim herein.

172.  Bird Rides, Inc.'s failure to provide routine inspection, evaluation, and maintenance of its Texas Bird Scooter fleet is a clear violations of Texas laws (e.g. the Deceptive Trade Practice Act) that are in place to protect the public.  Such practices pose an imminent and ongoing threat to the legal rights and financial security of all citizens in Texas, and again also pose a threat to Plaintiffs themselves as Plaintiffs may be, in the future, injured, or their property injured, when a Bird Scooter malfunctions due to Bird Rides, Inc.'s unlawful acts.

173.  Plaintiffs, as well as the citizens of Texas including the elderly, will suffer irreparable harm, damage, and injury unless the acts and conduct of Defendant Bird Rides, Inc. complained of above are enjoined because Bird Rides, Inc. will continue its business model that results in unsafe Bird Scooters being operated on Texas roadways and public

sidewalks.  Even if Plaintiffs prevail on the merits of the underlying lawsuit, the imminent threat of Bird Scooter's illegal practice is likely to cause additional irreversible damage to Plaintiffs and countless other Texas citizens.

174.  Both Defendant Bird Rides, Inc.'s potential future interaction with Plaintiffs and their actual ongoing interaction with the Texas citizenry create a substantial threat of serious injury to both.  Such acts, if continued, would render the judgment in this litigation ineffectual if the Plaintiffs prevailed and yet suffered such additional injury.  Moreover, under the principles of equity, the Plaintiffs are also entitled to an injunction because Bird Rides, Inc. continues to conduct themselves in the manner described above with full knowledge of the impropriety of their actions.

175.  If Plaintiffs' injunction is not granted, harm is imminent because Defendant Bird Rides, Inc. has openly admitted by their conduct that they continue to practice as described above – by providing Bird Scooters in Texas that are unsafe due to improper inspection, evaluation, and maintenance.

176.  The harm that will result if an injunction is not issued is irreparable because the Plaintiffs will suffer further physical or personal property injury, or other Texas citizens will so suffer, if Defendants continue with their business model.  Plaintiffs have no adequate remedy at law because no sum of money will adequately make whole Plaintiffs, or any Texas citizen, should Defendant Bird Rides, Inc.'s actions severely and/or permanently injure them.

177.  Plaintiffs have joined all indispensable parties under Texas Rule of Civil Procedure 39.

## XVI.     CONDITIONS PRECEDENT

178.  All conditions precedent to Defendant's liability and Plaintiffs' right to recover have been performed, have occurred, or have been waived.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that Defendant be cited to appear and answer, and that on final trial, Plaintiff is awarded damages and recovery as delineated above, and/or awarded:

1. Judgment against Defendants for actual and/or statutory damages and/or other damages detailed in Section XIII (Damages) of this Petition, and in an amount in excess of the minimum jurisdictional limits of the Court;

2. Court Costs;

3. Exemplary damages;

4. Treble damages under the Texas Deceptive Trade Practices Act;

5. Reasonable attorney's fees for certain claims detailed in Section XII (Causes of Action) of this complaint;

6. Pre- and post-judgment interests, with prejudgment and post judgment interest at the maximum lawful rate beginning as soon as the current law permits; and

7. Further relief, special and general, at law and in equity, to which the Plaintiffs may show themselves justly entitled.

## PLAINTIFFS RESPECTFULLY DEMAND A JURY TRIAL

Respectfully submitted,

BARNES & ASSOCIATES

/s/ Stephen A. Barnes
Stephen A. Barnes, MD, JD, FACLM
TBN 24066953

2219 Dorrington Street
Houston, Texas 77030
(713) 388-6777
(713) 437-3578 (fax)
sajbarnesmdjd@gmail.com
ATTORNEYS FOR PLAINTIFFS
DAVID B. MONTGOMERY AND
TIFFANY T. MONTGOMERY,
INDIVIDUALLY AND ON BEHALF OF
MINOR CHILDREN G.J. AND H.M.

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Stephen Barnes on behalf of Stephen Barnes
Bar No. 24066953
sajbarnesmdjd@gmail.com
Envelope ID: 60076968
Status as of 12/16/2021 10:31 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Stephen A.Barnes | | sajbarnes@comcast.net | 12/16/2021 8:54:17 AM | SENT |
| Stephen Barnes | 24066953 | sajbarnesmdjd@gmail.com | 12/16/2021 8:54:17 AM | SENT |